IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD A. ARRIETA, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-08-CV-1722-BD |
| LOCAL 745 OF THE INTERNATIONAL | § | |
| BROTHERHOOD OF TEAMSTERS, | § | |
| ET AL. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM ORDER**

Defendants The International Brotherhood of Teamsters ("IBT") and its Dallas-area affiliate, Local 745 of the International Brotherhood of Teamsters ("Local 745"), collectively referred to as "the Union," have filed separate motions for summary judgment in this civil rights action brought by three minority Union members alleging discrimination under 42 U.S.C. § 1981. In their complaint, plaintiffs allege that Local 745 subjected African-American and Mexican-American employees of Yellow Transportation, Inc. ("YTI") to a hostile work environment on account of their race or national origin, and in retaliation for attempting to enforce their legal rights through the EEOC and federal court. (*See* Plf. Compl. at 2-3, ¶ 10). Plaintiffs further allege that IBT breached its affirmative duty to protect Union members from illegal discrimination by failing to investigate the actions of Local 745 and YTI. (*See id.* at 5-6, ¶¶ 13-18). Defendants move for summary judgment on various grounds, including: (1) the absence of any evidence that the Union itself instigated or actively supported the alleged discriminatory acts; and (2) plaintiffs never asked the

Union to file a grievance on their behalf. The issues have been fully briefed by the parties, and the motions are ripe for determination.[1]

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

The substantive law governing this case is 42 U.S.C. § 1981. Under this statute:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]

42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). In order to prevail on their section 1981 claim, plaintiffs must prove that: (1) they are racial minorities; (2) defendants intended to

---

[1] Plaintiffs have filed a separate motion to disregard Local 745's reply brief because it contains new arguments that were not raised in its motion for summary judgment. Because the court has not considered this reply in deciding the summary judgment motions, the motion to disregard [Doc. #46] is denied as moot. *See McKnight v. Trinity River Auth. of Texas*, No. 3-07-CV-2107-K, 2009 WL 1117436 at *6 (N.D. Tex. Apr. 21, 2009) (denying as moot motion to strike reply brief where court would reach the same conclusion whether or not it considered the reply).

discriminate on the basis of race; and (3) the discrimination concerned one or more activities enumerated in the statute. *See Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). A labor union may violate section 1981 if it intentionally fails or refuses to file a grievance for race discrimination after being asked by a member to do so, *see Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667-69, 107 S.Ct. 2617, 2624-25, 96 L.Ed.2d 572 (1987), or if the union causes or attempts to cause an employer to discriminate on the basis of race. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 703-04 (8th Cir. 1999). To establish liability under the latter theory, a plaintiff must show that "the Union *itself* instigated or actively supported the discriminatory acts" made the basis of the suit. *Anjelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3d Cir. 1999) (emphasis in original).

The evidence shows that Local 745 officials witnessed and received reports of a racially hostile work environment at YTI dating back to 2001.[2] In November 2004, Local 745 hired Ruben Armendariz, an experienced labor relations investigator, to look into allegations of threats, physical attacks, and other acts of intimidation against YTI employees. (*See* IBT MSJ App. at 4, 107-08). Armendariz met with a group of employees represented by Fred Brooks, a Local 745 member. (*Id.* at 110). At that meeting, Brooks reported that African-American workers were being targeted by a hate group within YTI and described a number of racially offensive incidents at the company, but refused to identify any individuals responsible for the hostile acts and failed to provide direct evidence to support his allegations. (*See id.* at 110-13, 124-25). Instead, Brooks speculated that Union stewards encouraged Local 745 members to vandalize cars belonging to African-American employees, and broadly asserted that one of those stewards, Chuck Barrett, was primarily responsible

---

[2] The facts giving rise to plaintiffs' hostile work environment claim against the Union were the subject of a separate lawsuit brought against YTI. In that case, a jury found in favor of one plaintiff, Roger Johnson, but against two other plaintiffs, Richard Arrieta and Chris Calip. *See Wesley v. Yellow Transp., Inc.*, Nos. 3-05-CV-2266-D & 3-05-CV-2271-D, 2010 WL 3606095 (N.D. Tex. Sept. 16, 2010), *appeal dism'd*, No. 10-11065 (5th Cir. Dec. 23, 2010).

for these problems. (*Id.* at 110-12). Despite repeated attempts to further question Brooks and other members of his group, both in person and through written interrogatories, Armendariz was unable to obtain the information needed for his investigation. (*See id.* at 108, 114-22, 125-27). Brooks also refused to provide IBT, which launched a separate investigation into the allegations of a hostile work environment at YTI, with the names of Union officials responsible for the racially hostile acts. (*See id.* at 10-21). Armendariz was able to obtain documents from YTI, meet with company representatives, and research law enforcement records, but found no evidence of discrimination by Union members. (*See id.* at 126-27, 151-81). In a detailed investigative memorandum dated March 4, 2005, Armendariz concluded that there was no evidence to substantiate the claims made by Brooks and his group. (*Id.* at 123-28). The investigation was closed, and no further action was taken by Local 745 or IBT. (*See id.* at 3; Local 745 MSJ App. at 4).

Plaintiffs do not allege, much less prove, that they ever asked the Union to file a grievance alleging discrimination or hostile work environment on account of race. Nor have plaintiffs adduced any evidence that the Union instigated or actively supported race discrimination by its members or YTI. Tacitly conceding their failure to establish section 1981 liability under a conventional legal theory, plaintiffs argue that the Union is responsible for "passively support[ing] the discriminatory acts" of YTI employees. (*See* Plf. MSJ Resp. at 11). In support of that argument, plaintiffs rely on dicta in *Woods v. Graphic Communications*, 925 F.2d 1195 (9th Cir. 1991), wherein the Ninth Circuit suggested that after *Goodman*, a union may have an affirmative duty to combat discrimination in the workplace. *See Woods*, 925 F.2d at 1201. However, in *Goodman*, the Supreme Court affirmed a judgment in favor of plaintiffs because "the case against the Unions was much stronger than one of mere acquiescence in that the Unions deliberately chose not to assert claims of racial discrimination by the employer." *Goodman*, 107 S.Ct. at 2624. Indeed, courts since *Goodman*

and *Woods* have uniformly rejected arguments seeking to impose on a union the affirmative duty to investigate or remedy a hostile work environment. As the Seventh Circuit noted in *EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656 (7th Cir. 2003):

> An affirmative duty of the union to investigate and rectify discrimination by the employer derives no support from the statutory language . . . and fills no gap in the remedial scheme that the statute creates. Imposing such a duty would make for factually messy cases because the union's power is so much more limited than the employer's when it comes to making changes in personnel or work rules.

*Id.* at 660-61. *See also Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832-33 (8th Cir. 2002), *citing Anjelino*, 200 F.3d at 95-96 ("Though the Unions were prohibited from causing or assisting unlawful discrimination by [plaintiff's] employer, nowhere in either [Title VII or the Minnesota Human Rights Act] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination."); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 566 (S.D.N.Y. 2005) (rejecting section 1981 hostile work environment claim on grounds that employer, not union, has duty to maintain environment free of discrimination).[3]

Even if the Union had an affirmative duty to investigate plaintiffs' allegations, it fully discharged that duty. Within 45 days of receiving a letter from Books, Local 745 hired Armendariz to investigate the allegations of race discrimination and hostile work environment at YTI. Inexplicably, Armendariz was repeatedly stonewalled by the very Union members who asked for the investigation, and his efforts to gather usable evidence from other sources proved fruitless. Unable to substantiate the claims made by Brooks, Armendariz closed his investigation. Nothing in the

---

[3] The court recognizes that Brent Taylor, a Local 745 official, wrote a letter to Fred Brooks stating that "Unions have an affirmative obligation to protect its members from illegal discrimination." (*See* Plf. MSJ App. at 29). However, that statement does not impose a duty on the Union where none exists as a matter of law. Nor can plaintiffs establish that they relied on this statement to their detriment, as it was made after Armendariz concluded his investigation.

record suggests that Local 745 acted out of discriminatory animus when it declined to take further action. For its part, IBT was justified in relying on the investigation conducted by Local 745, particularly after its own efforts to investigate allegations of discrimination by Union officials and representatives went nowhere. *See Carter*, 173 F.3d at 704 (affirming dismissal of Title VII claim against union where uncontroverted evidence showed that union officials investigated plaintiff's allegations of harassment).

In sum, there is no evidence to support a section 1981 claim against Local 745 or IBT for discrimination in the workplace, or for creating or maintaining a racially hostile work environment. Defendants are entitled to judgment as a matter of law.

## CONCLUSION

Defendants' motions for summary judgment [Docs. #32 & 35] are granted. The court will dismiss this case with prejudice by separate judgment filed today.

SO ORDERED.

DATED: January 26, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE